## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.R. and R.R.-1**

**No. 18-0496** (Kanawha County 16-JA-224 and 16-JA-225)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.R.-2, by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's May 1, 2018, order terminating his parental rights to D.R. and R.R.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth G. Kavitz, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-adjudicatory improvement period, adjudicating him based upon testimony previously presented when his newly-appointed counsel was not present, and denying him post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2016, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that the family had a long history of drug use and lack of supervision of the children. Specifically, the DHHR noted that the mother tested positive for opiates upon giving birth to the youngest child and that the parents operated a mobile methamphetamine laboratory out of their Chevrolet Blazer in the children's presence. Upon speaking with a DHHR worker, petitioner denied the allegations and refused to submit to any drug screens. The DHHR concluded that petitioner failed to protect the children, adequately supervise them, or provide them with the necessary food, clothing, and housing. As a result, the custody of the children was transferred to the DHHR.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as R.R.-1 and R.R.-2, respectively, throughout the memorandum decision.

1

The circuit court held an adjudicatory hearing in June of 2016, wherein petitioner requested a preadjudicatory improvement period. The circuit court granted petitioner's request and, at some point, permitted the children to be placed back in the parents' physical custody. As part of the terms and conditions of the preadjudicatory improvement period, petitioner was ordered to participate in parenting classes and allow drop-in visits by the DHHR.

Subsequently, the children were again removed from the parents' care and they were provided with visitation, including overnight weekend visits. However, the mother was unable to comply with her improvement period and her parental rights were ultimately terminated in May of 2017. The father was eventually given physical custody of the children and was ordered not to have either direct or indirect contact with the mother.

In August of 2017, the DHHR filed an amended petition alleging that petitioner allowed the children to be with the mother, unsupervised, against court order and despite the prior termination of her parental rights. Specifically, the DHHR alleged that the oldest child reported that his mother was living in the home and that petitioner hid her in the woods when Child Protective Services ("CPS") came to the home. After learning this information, a CPS worker went to petitioner's home and found a woman at the residence who denied being the mother of the children and later fled the scene. Petitioner arrived at the home during the incident and also denied that the woman was the mother of the children, but then ran into a neighbor's home to avoid further conversation with the CPS worker after being confronted with the oldest child's disclosure. The neighbor confirmed that the woman who fled was the mother of the children.

In October of 2017, the DHHR received a referral and, upon investigating, determined that petitioner had left the children in the paternal grandmother's home, which was previously determined to be unsuitable because it had been condemned and was roach infested. The paternal grandmother stated that she had not heard from petitioner in approximately one week. The DHHR removed the children from the home at that time.

The circuit court held a dispositional hearing in January of 2018, wherein the DHHR presented the testimony of two CPS workers. The workers testified that petitioner continued to allow the mother around the children in violation of court order. One worker testified regarding the August of 2017 incident in which she found the mother in the home and the parents lied about her identity. The other worker testified that the DHHR had twice tried to place the children in petitioner's custody only to subsequently remove them due to his noncompliance. Testimony established that petitioner received services for nearly two years and no other services were available to help him improve his parenting skills.

Petitioner testified that he lied about the mother being in his home because she told him she was pregnant and he was scared. Petitioner stated that he always provided for the children financially and quit his job working away from home to stay with the children. Petitioner believed the children were lying regarding their contact with the mother and continued to deny any wrongdoing, stating "I could sit up here and talk probably for the next two days about how wrongly I feel I've been done throughout this case." Ultimately, the circuit court terminated petitioner's parental rights. Petitioner was granted new counsel for the purpose of appeal.

Petitioner's new counsel discovered that petitioner had not been adjudicated during the proceedings and the circuit court set aside the dispositional order in February of 2018.

In March of 2018, the circuit court held an adjudicatory hearing wherein the DHHR moved the circuit court to consider all prior evidence submitted for adjudicatory purposes. Counsel for petitioner objected on the basis that she was not involved in the prior proceedings and was not present to hear the testimony. Moreover, petitioner's counsel alleged that no substantive testimony had been taken. The circuit court granted the DHHR's motion and adjudicated petitioner as an abusing parent based upon his failure to complete his preadjudicatory improvement period, failure to protect the children from the mother, and allowing the mother to have contact with the children against court order.

The circuit court held a dispositional hearing in April of 2018. Petitioner failed to attend but was represented by counsel. The DHHR moved the circuit court to consider all prior evidence, which the circuit court granted without objection. The DHHR presented the testimony of a CPS worker who testified that petitioner was in contact with the mother again, against court order. After hearing evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the children's best interests. It is from the May 1, 2018, dispositional order terminating his parental rights that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in adjudicating him based upon testimony presented earlier in the proceedings when his newly-appointed counsel was not present and did not have access to the hearing transcripts. Petitioner states that he was entitled to

---

[2]The parents' parental rights were terminated during the underlying proceedings. The children were placed with a relative and the permanency plan for the children is adoption therein.

an adequate defense, which could not occur when his counsel did not have knowledge of the evidence relied on by the state. By being adjudicated solely based upon prior testimony, petitioner avers that his due process rights were denied. We disagree.

First, petitioner cites to no authority in support of his argument. Second, petitioner's argument is without merit as he was represented by counsel at every stage of the proceedings, testimony was properly taken during prior hearings, and petitioner's then newly-appointed counsel had access to the court file. Petitioner's prior counsel was present to cross-examine witnesses presented by the DHHR and presented four witnesses at the hearing in January of 2018. After petitioner's parental rights were untimely terminated, his newly-appointed counsel gained access to the record which included substantial information on petitioner's progress throughout the proceedings, including case summaries and prior orders. His counsel raised issue with the circuit court's failure to adjudicate petitioner and the circuit court set aside its prior order to properly adjudicate petitioner at a hearing in March of 2018, where petitioner's counsel was provided the opportunity to present further evidence but did not.

Moreover, the record establishes that there was sufficient evidence upon which to adjudicate petitioner as an abusing parent. We have previously noted as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W.Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

> Pursuant to West Virginia Code § 49-1-201, a

> "'[n]eglected child' means a child: (A) [w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]"

Here, the record, even apart from the hearing transcripts, establishes that petitioner was ordered not to have direct or indirect contact with the mother. However, petitioner continued to contact the mother and the oldest child reported that she was living in the home with them. CPS

responded to the house and found the mother present. Petitioner lied about the mother's identity and fled to a neighbor's house to avoid questioning. Further, petitioner allowed the children to be in the paternal grandmother's home, in violation of court order. The home was condemned, dirty, and roach infested, yet petitioner left the children there for nearly a week in October of 2017 and could not be contacted. As such, petitioner failed to provide the children with the proper supervision and shelter and the circuit court properly adjudicated him based upon the evidence presented throughout the proceedings.

To the extent petitioner argues that the circuit court should have required the DHHR to re-present the prior testimony, we note that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). However, the record does not reveal that the underlying proceedings were substantially disregarded or frustrated. In light of the substantial evidence of record upon which to adjudicate petitioner, his constant representation, and his opportunity to cross-examine witnesses and present evidence, we find that he is entitled to no relief in this regard.

Next, petitioner argues that the circuit court erred in terminating his parental rights without first granting him a post-adjudicatory improvement period.[3] According to petitioner, he successfully complied with his preadjudicatory improvement period such that the children were returned to his care for a period of time. He avers that the issues that arose and led to his adjudication and ultimate termination of parental rights were the result of being a single parent with limited resources, which could have been remedied with additional services. We find petitioner's argument to be meritless.

Pursuant to West Virginia Code 49-4-610(2)(D), the circuit court may grant a post-adjudicatory improvement period if

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in

---

[3]In support of his argument, petitioner asserts that the appropriate remedy for his failure to follow court orders was a contempt action rather than termination of parental rights. However, petitioner cites to no authority to support his argument and, as such, we decline to address the argument on appeal.

circumstances the [parent] is likely to fully participate in a further improvement period[.]

In his brief on appeal, petitioner fails to discuss whether he experienced a substantial change in circumstances since he was granted his preadjudicatory improvement period. Further, the record demonstrates that he was not likely to fully participate in a further improvement period due to his noncompliance and refusal to acknowledge the conditions of abuse. During the underlying proceedings, petitioner was granted a preadjudicatory improvement period in June of 2016 and received services until his parental rights were terminated in April of 2018. Despite such an extensive improvement period, petitioner continued to allow the children around the mother and left the children at the paternal grandmother's house, in violation of court order. At the time of the January of 2018 dispositional hearing, petitioner failed to acknowledge the conditions of abuse, claimed his children were lying, and blamed the DHHR for his situation, stating "I could sit up here and talk probably for the next two days about how wrongly I feel I've been done throughout this case."

We have previously held,

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Despite having ample time and resources, petitioner continued to disobey court orders and failed to acknowledge the conditions of abuse, rendering a post-adjudicatory improvement period futile. Therefore, the circuit court did not err in denying him the same.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) sets forth that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, the record demonstrates that petitioner was granted a preadjudicatory improvement period in June of 2016 and offered several services, but failed to comply with the circuit court's orders prohibiting contact with the mother and placement of the children in the paternal grandmother's condemned home. Petitioner complied with his services sufficiently such that the children were placed with him twice throughout the proceedings, but the children were subsequently removed due to petitioner's inability to comply with these orders. The evidence

discussed above established that petitioner allowed the mother in the home, lied about her identity to CPS workers, and left the children in the paternal grandmother's condemned home for approximately one week. Petitioner did so despite numerous clear instructions, accused CPS of wrongfully dealing with him, and testified that the oldest child was lying about his disclosure regarding the mother. As such, we find that the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future as he clearly did not respond to rehabilitative efforts over the course of the preceding two years.

Petitioner lastly argues that the circuit court erred in denying him post-termination visitation with the children. According to petitioner, the record demonstrates that he did not commit any "acts of abuse" against the children, had a close relationship with them, and enjoyed spending time with them. Petitioner argues that the children should be permitted visitation with him if they so desire. We find petitioner's argument to be unpersuasive.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). Here, petitioner failed to establish that post-termination visitation would be in the best interests of the children. Petitioner failed to properly care for or supervise the children by allowing the mother to contact them and by leaving them in a condemned home. These actions resulted in the children's removal from petitioner's care during the preadjudicatory improvement period. Further, petitioner failed to demonstrate that his children, ages six and two, are of appropriate maturity to make a request for visitation. As such, we find that the circuit court did not abuse its discretion in denying petitioner post-termination visitation as the evidence supports a finding that it would not be in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 1, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 19, 2018

7

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment