**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **V.T., S.T., T.T., and S.B.**

**No. 22-633** (Harrison County 21-JA-203-2, 21-JA-204-2, 21-JA-205-2, and 21-JA-207-2)

## MEMORANDUM DECISION

Petitioner Father and Stepfather J.T.[1] appeals the Circuit Court of Harrison County's June 22, 2022, order terminating his parental and custodial rights to V.T., S.T., T.T., and S.B.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September of 2021, the DHHR filed a petition against petitioner (the father of V.T., S.T., and T.T. and stepfather of S.B.) and P.T. (the mother of S.B. and stepmother of V.T., S.T., and T.T.) alleging that the couple failed to protect the children from the children's adult stepbrother/half-brother's (Z.D.) sexual abuse. In late August of 2021, S.T. ran away from home, was located by police, and disclosed Z.D.'s sexual abuse of the children during a child advocacy center ("CAC") interview. Then-fifteen-year-old S.T. (1) disclosed that Z.D.'s sexual abuse started when she was thirteen years old and (2) alleged that the family moved from New York to three different counties in North Carolina and then to West Virginia to evade child welfare authorities.[3] S.T. stated that P.T. was fully aware of the abuse, as P.T. had walked in on instances of Z.D. inappropriately touching his siblings. S.T. also reported that when she told petitioner and P.T. about instances of the abuse, they refused to believe her or acknowledge the abuse. The DHHR further alleged that petitioner and P.T. emotionally abused the children by insulting them and calling them vulgar names; that petitioner excessively punished the children by beating them with a belt; and that P.T. threw objects, like shoes, at the children.

---

[1]Petitioner appears by counsel Dean R. Morgan. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katica Ribel. Dreama D. Sinkkanen appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3]The children ranged in age from ten to sixteen years old when the petition was filed. Z.D. is the son of P.T. from a prior relationship.

1

The circuit court held contested adjudicatory hearings in October and December of 2021 and April of 2022. P.T. denied that she or petitioner ever struck the children. She further testified that the family had strict rules that the male children could not be upstairs where the girls' rooms were located, and the girls could not be in the boys' room in the basement. When questioned about prior child welfare services involvement with the family in North Carolina, P.T. admitted that there were reports in 2019 about her son Z.D.'s sexual misconduct with the other children, but she asserted that North Carolina did not file a case against the family. Petitioner testified consistent with P.T.'s testimony. When questioned about prior allegations, petitioner did not disclose the details about referrals made in New York. Petitioner denied ever leaving a mark or bruise on the children when disciplining them. He stated that none of the children had disclosed any abuse and that S.T. lashes out when she does not get her way.

The DHHR worker testified that he was present during S.T.'s CAC interview and his description of S.T.'s allegations was consistent with the petition. The DHHR moved for the admission of several exhibits concerning prior child protective services involvement with the family in New York and North Carolina spanning from 2010 to the present. The allegations included the parents' lack of supervision over the children, Z.D.'s sexual misconduct, P.T.'s sexually explicit social media post, and two of the children watched pornography on a public library's computer.

The forensic interviewer testified that all the children were interviewed in early August of 2021 at the CAC but did not disclose sexual abuse at that time. However, during the interviews, V.T. revealed that P.T. deliberately smashed S.T.'s cellphone after an argument. S.B. disclosed being afraid when petitioner and P.T. "had fights." T.T. stated that the family had moved to several places but denied any abuse. S.B. reported that Z.D. had sex with a cousin in North Carolina but denied that Z.D. sexually abused her. In this interview conducted a few weeks before S.T. ran away from home, S.T. did not disclose sexual abuse but instead disclosed allegations of domestic violence such as P.T. attempting to run petitioner over with a car and holding a knife to him. She also reported that petitioner struck Z.D., causing him to fall to the ground and that P.T. purposefully broke S.T.'s cellphone.

The interviewer further testified that during a subsequent CAC interview with S.T. taken after she ran away in late August of 2021, S.T. recanted her prior statement that she did not know anything about sexual abuse by Z.D. S.T. admitted that she lied because her aunt was waiting in the lobby and could hear what she said. She also said that Z.D. was sending her threatening texts during the first CAC interview. S.T. stated that P.T. told the children that they would move out of West Virginia if Z.D. got into trouble for his sexual misconduct. S.T. described several incidents in which Z.D. sexually abused her, V.T., and S.B. She stated that during a month that the children were left alone while petitioner and P.T. were "on the road" driving a truck, V.T. caught Z.D. having oral sex with his half-sister S.B. S.T. stated that she called petitioner and told him about the incident, but he did not believe her. She also told the interviewer that P.T. deleted a video from a personal device of Z.D. forcing T.T. to "dry hump" him. When describing an incident where Z.D. forced her to put her hand in his pants, S.T. said Z.D. told her, "It's not like we are biological siblings." Finally, S.T. disclosed that petitioner struck her across the face and that she had seen petitioner slap P.T.

At a status hearing in January of 2022, the court announced that had it conducted an in camera interview of S.T. the day prior and that S.T.'s statements were consistent with those made in her second CAC interview disclosing extensive sexual, physical, and emotional abuse in the home. In the final adjudicatory order, the court found that "there was a plan and concerted effort to intimidate these children and secure their silence." The court summarized the concerning pattern of various referrals made since 2015 regarding lack of supervision of the children and sexual abuse in the home, including referrals from other family members who directly witnessed Z.D. sexually abusing S.B. The court found that petitioner and P.T. moved the children "from place to place when [Z.D.'s] behaviors were discovered and investigated." It also determined that petitioner and P.T. were not truthful about the number of referrals though the years, including the numerous referrals in New York. Based on the evidence, the court found that petitioner and P.T. knew that the children were being sexually abused but chose to protect Z.D. from prosecution. The court further found that petitioner physically abused S.T. and V.T. and that petitioner and P.T. chronically emotionally abused all of the children. Accordingly, the court adjudicated petitioner as an abusing parent.

Petitioner filed a motion for a post-adjudicatory improvement period in May of 2022. That same month the circuit court held a contested dispositional hearing, during which the court took judicial notice of all prior evidence. Petitioner testified that he was sometimes too strict with the girls, as he wanted them to dress modestly and not have "their legs wide open for the world to see anything." He claimed that he had been cooperating with the DHHR's services. He stated that he remained unconvinced that Z.D. was sexually inappropriate with the children and cited the previous unsubstantiated allegations in North Carolina. A service provider testified that several of the children did not want to visit with petitioner and P.T. and that P.T. would entice the children to visit by providing Easter baskets and toys and bringing the family pets. She further stated that she observed petitioner criticizing the female children's clothing by telling them to adjust their shirts and that their pants were too tight. He also asked the children during a visit whether they told anyone that he had beat them with a belt. The provider stated that all of the children were afraid to decline visits. The DHHR worker testified that all children but S.B. wanted to remain in their placements.

The court's dispositional order specifically provides that petitioner "maintains that the sexual abuse of the children previously found by this court is a false accusation." The court found that the DHHR was relieved of its duty to make reasonable efforts to reunify the family due to the "severity of the abuse" and petitioner and P.T.'s "failure to take any responsibility for said abuse." The court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of petitioner's parental and custodial rights was necessary for the children's welfare. Consequently, the court terminated petitioner's parental and custodial rights by order entered on June 22, 2022.[4]

---

[4]The parental rights of the mother of V.T., S.T., and T.T. were terminated. The permanency plan for these children is adoption by the paternal grandmother. S.B.'s mother's parental rights were terminated below. The father of S.B. voluntarily relinquished his parental rights. S.B.'s permanency plan is adoption by her foster family.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, petitioner argues that the circuit court erred in adjudicating him as an abusing and neglecting parent, as there was not clear and convincing evidence to support his adjudication. Petitioner argues that S.T. was the only child that disclosed sexual abuse by Z.D. However, the evidence below supports petitioner's adjudication under a clear and convincing standard. *See* W. Va. Code § 49-4-601(i) (requiring a circuit court to find, "by clear and convincing evidence," that a parent has abused and/or neglected a child at the conclusion of the adjudicatory hearing); *In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (explaining that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established").

Although S.T. was the only child to specifically disclose sexual abuse by Z.D., the other children disclosed emotional abuse and instances of domestic violence. Additionally, petitioner admitted to slapping S.T. and did not deny that he cursed at the children. The record also shows a concerning pattern of allegations in New York and North Carolina that involved the parents' lack of supervision, Z.D.'s sexual misconduct, P.T.'s sexually explicit social media posts, and the children's viewing of pornography on a public library's computer. The circuit court also found that S.T.'s statements during an in camera interview were consistent with her prior statements made during her second CAC interview. The court weighed this testimony, as well as that of other witnesses, and did not find petitioner and P.T.'s testimonies credible. We decline to disturb its credibility determinations. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Finally, the court found that petitioner and P.T. systematically silenced the children to protect Z.D. The evidence against petitioner was overwhelming, and we find no error in the circuit court's adjudication of petitioner as an abusing and neglecting parent. *See* W. Va. Code § 49-1-201 (defining "neglected child," in part, as one who is harmed or threatened by a parent's "failure . . . to supply the child with necessary . . . supervision" and an "abused child," in part, as one who is harmed or threatened by a parent who "intentionally inflicts . . . physical, mental, or emotional injury, upon the child or another child in the home").

Petitioner also argues that the circuit court erred in denying him an improvement period. Petitioner cites his cooperation with services and alleged willingness to fully participate in an improvement period. *See id.* § 49-4-610(2). However, petitioner concedes in his brief on appeal that he did not acknowledge the sexual abuse in the home. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As such, the circuit court did not err in denying petitioner an improvement period.

Lastly, petitioner argues that the circuit court erred in terminating his parental rights because the conditions of abuse and neglect had been corrected by the dispositional hearing—namely Z.D. no longer living in the home. Petitioner further stresses the importance of the parent/child relationship to the stability of the children and argues that termination was not necessary for the children's welfare. Upon our review, we find no error. No reasonable likelihood that the conditions of abuse and neglect can be corrected includes when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]

W. Va. Code § 49-4-604(d)(5). Here, the facts bear out that the children suffered emotional, mental, physical, and sexual abuse for years while in the parents' care and that three of the four children no longer wish to live with petitioner or P.T.[5] Petitioner failed to acknowledge the conditions of abuse and neglect, which also supports the court's finding that termination was necessary to protect the children from further abuse. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental and custodial rights to the children. *See also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that "[t]ermination of parental rights . . . may be employed . . . when it is found that there is no reasonable likelihood . . . that the conditions of neglect or abuse can be substantially corrected").

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 22, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: May 16, 2023

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[5]*See* W. Va. Code § 49-4-604(c)(6)(C) ("the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights").