# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.M.**

**No. 20-0053** (Tucker County 19-JA-20)

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.M., by counsel David C. Fuellhart, appeals the Circuit Court of Tucker County's December 17, 2019, order terminating his parental rights to S.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed an abuse and neglect petition after receiving a referral that then sixteen-year-old S.M. was suicidal due to being sexually abused by petitioner when she was seven and eight years old.[3] Previously, in 2017, then fourteen-year-old S.M. reported the same sexual abuse allegations but the DHHR could not substantiate the claims and the matter was closed.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner assigns no error to the termination of his parental rights.

[3]The parental rights of S.M.'s biological parents were previously terminated. She was adopted by petitioner and the mother and has lived with them since age six.

1

The circuit court held a contested preliminary hearing in July of 2019, during which the DHHR presented the testimony of a worker who stated that S.M. disclosed that petitioner regularly sexually abused her between the ages of seven and eight and that she was afraid to tell the truth in the previous referral. The worker also testified that S.M.'s adult brother, O.C., corroborated many of S.M.'s allegations of abuse and disclosed his own sexual abuse by petitioner and physical abuse by the mother.[4] A youth service worker with the DHHR who is assigned to O.C.'s care also testified that O.C. disclosed sexual abuse and that the abuse occurred when the mother was not home. Based upon the evidence presented, the circuit court found probable cause to believe that S.M. had been abused.

In October of 2019, the circuit court held a contested adjudicatory hearing. The DHHR presented three witnesses. The first witness was the Child Advocacy Center ("CAC") interviewer who completed the forensic interview of S.M. during the investigation in May of 2017. She testified that delayed disclosures of sexual abuse are common with children and that S.M. disclosed very specific instances of sexual abuse that occurred while the mother was not home when S.M. was seven and eight years old. The interviewer further explained that her job was not to assess whether the child was telling the truth but to instead "collect information in a way that [wa]s non-leading." When questioned about S.M. not reporting the identity of her perpetrator during a medical exam in 2016, the interviewer answered that S.M. later stated that she had not "told everything that happened" during the medical visit.[5] Lastly, the interviewer testified that she did not obtain any information from O.C. in 2017.[6] Next, O.C. testified and, although he was obviously uncomfortable, he was able to articulate that petitioner committed acts of sexual abuse upon himself and S.M. during the summers of 2009 and 2010 when the mother was not home. The DHHR then closed with the testimony of the assigned Child Protective Services ("CPS") worker who testified that when she came to the home for the 2019 referral, S.M. disclosed the abuse, but the mother interrupted her and claimed that S.M. was lying. Regarding the identity of S.M.'s abuser, the CPS worker testified that S.M. answered that she had never "said anything other than it was [petitioner]." The CPS worker testified that O.C. also corroborated S.M.'s claims when interviewed and that he reported that his violent outburst with the mother in 2017 was due to the mother refusing to believe S.M. about the sexual abuse. Finally, she testified that the previous worker in the 2017 referral made a mistake by failing to substantiate S.M.'s claims of sexual abuse. At the close of the DHHR's case, the mother presented the testimony of the former CPS supervisor who managed the 2017 investigation. The CPS supervisor testified that despite S.M.'s disclosures of petitioner's sexual abuse in the CAC interview, she did not substantiate the claims of sexual

---

[4]In 2017, O.C., who was diagnosed with autism, was also removed from petitioner's home due to a physical altercation with the mother. Following his removal, O.C. resided in an independent living facility.

[5]The record indicates that the mother was present during this medical exam and insisted that S.M.'s perpetrator was not petitioner.

[6]There appears to be a discrepancy in the record as to whether O.C. was interviewed at this time as his testimony reflects confusion over whether he was interviewed. Also, another DHHR worker noted that O.C. was too upset and agitated on the day of the scheduled interview to participate in questioning, which would explain why he did not disclose abuse at that time.

abuse because O.C. did not disclose sexual abuse, she received a letter from a medical provider stating that S.M. did not identify her abuser during a medical exam in 2016, and S.M.'s statements about the specific details of some of the acts of sexual abuse were inconsistent in the CAC interview. However, the CPS supervisor now agreed that there was ample evidence in the 2019 referral to substantiate abuse and approved the filing of the instant petition. Having heard the evidence, the circuit court found that petitioner sexually abused S.M. and adjudicated him as an abusing parent.

In November of 2019, the circuit court held a final dispositional hearing. The DHHR previously filed its motion to terminate petitioner's parental rights and moved the circuit court to take judicial notice of all prior evidence presented. In support of its motion, the DHHR presented the testimony of the assigned CPS worker who testified that S.M. did not wish to stay in petitioner's care, petitioner had not accepted responsibility for his actions, and petitioner had not requested to visit S.M. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on December 17, 2019.[7]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. In petitioner's view, the evidence presented to the circuit court "did not meet the clear and convincing burden of proof standard." According to petitioner, O.C.'s testimony was "riddled with inconsistencies" and S.M.'s CAC interview and statements made during her medical exam in 2016 were inconsistent with details regarding the sexual abuse. Finally, he contends that because the 2017 allegations were "basically" the same as the allegations in 2019, the 2019 allegations, likewise, should have been deemed unsubstantiated. We disagree.

---

[7]The mother's parental rights were also terminated below. The child has since reached the age of majority.

We have previously held as follows:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Additionally, pursuant to West Virginia Code § 49-1-201, an abused child means a child whose health or welfare is being harmed or threatened by sexual abuse or sexual exploitation.[8]

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent of S.M. Although petitioner points out some inconsistencies in O.C.'s testimony, he ignores the fact that the majority of O.C.'s testimony was consistent with S.M.'s sexual abuse claims. Specifically, O.C. testified several times that the sexual abuse occurred in the home, usually on the couch in the main living area, during instances when the mother was away. Most importantly, O.C. testified that he both witnessed certain acts of sexual abuse of S.M. and also suffered from other acts of petitioner's sexual abuse during the summers of 2009 and 2010—years that corresponded with S.M.'s statements that she was abused at ages seven and eight.

---

[8]Sexual abuse is defined as Sexual abuse is defined as

(A) Sexual intercourse, sexual intrusion, sexual contact, or conduct proscribed by [§ 61-8C-3] of this code, which a parent, guardian, or custodian engages in, attempts to engage in, or knowingly procures another person to engage in, with a child notwithstanding the fact that for a child who is less than 16 years of age, the child may have willingly participated in that conduct or the child may have suffered no apparent physical, mental or emotional injury as a result of that conduct or, for a child 16 years of age or older, the child may have consented to that conduct or the child may have suffered no apparent physical injury or mental or emotional injury as a result of that conduct;

(B) Any conduct where a parent, guardian, or custodian displays his or her sex organs to a child, or procures another person to display his or her sex organs to a child, for the purpose of gratifying the sexual desire of the parent, guardian, or custodian, of the person making that display, or of the child, or for the purpose of affronting or alarming the child; or

(C) Any of the offenses proscribed in [§ 61-8B-7, § 61-8B-8, or § 61-8B-9] of this code.

W. Va. Code § 49-1-201.

Also, although O.C.'s diagnosis of autism may have impacted his ability to clearly answer questions, the transcript of the adjudicatory hearing shows that he gave details regarding the allegations of sexual abuse that corroborated S.M.'s allegations and that he witnessed the abuse with his "own eyes." Given that O.C.'s testimony regarding petitioner's sexual abuse was clear, the circuit court was free to resolve any inconsistencies as a matter of credibility, and this Court will not disturb those determinations on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Further, petitioner contends that the instant claims should have been found unsubstantiated like the 2017 claims yet ignores the fact that O.C.'s disclosures in 2019 gave the DHHR corroborating evidence against petitioner. Also, several DHHR workers testified that the mother deliberately sabotaged the 2017 investigation by pushing the narrative that S.M.'s mother's boyfriend and/or biological father was her abuser and not petitioner. Finally, petitioner failed to participate in the adjudicatory hearing and present any testimony in support of his position. *See* Syl. Pt. 2, *W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996) ("[W]here the parent or guardian fails to respond to probative evidence offered against him/her during the course of an abuse and neglect proceeding, a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability."). Accordingly, we find no error in the circuit court adjudicating petitioner as an abusing parent.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison