# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.H., C.H., and D.H.**

**No. 20-0378** (Monongalia County 19-JA-38, 19-JA-39, and 19-JA-40)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.L., by counsel Edmund J. Rollo, appeals the Circuit Court of Monongalia County's February 24, 2020, order terminating her parental rights to S.H., C.H., and D.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman ("guardian"), filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that her conduct constituted aggravated circumstances and terminating her parental rights due to her failure to acknowledge the basic truth of the allegations of abuse and neglect of the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 12, 2019, the DHHR filed a child abuse and neglect petition against petitioner and her live-in boyfriend J.N. alleging that she failed to protect the children from J.N.'s physical abuse. The petition further alleged that petitioner failed to protect then-fourteen-year-old C.H. from sexual abuse by his older brother, then-sixteen-year-old D.H. Upon a referral from school personnel on February 6, 2019, a Child Protective Services ("CPS") worker spoke to C.H. at which time C.H. divulged extensive sexual abuse by D.H., which began about a month prior. C.H. reported that he believed that D.H. was also sexually abusing their younger sister, then-four-year-old S.H. Further, C.H. reported that J.N. physically abused him. Two days after the initial interview, the CPS worker received another referral from the school that C.H. had large bruises on

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

his upper and lower back, with several marks matching a belt buckle. C.H. reported that J.N. beat him, and the CPS worker received several photographs of the bruises taken by school personnel.

The circuit court held a contested preliminary hearing later in February of 2019, during which the CPS worker testified that on February 6, 2019, C.H. reported that J.N. hit him on the head injuring his ear and finger while C.H. was lying on the couch. The worker authenticated a photo of C.H.'s ear, and the circuit court admitted it into evidence. The worker also testified that C.H. reported that same day that he was sexually abused by his older brother D.H. The worker explained that a petition against petitioner was not filed at that time because C.H.'s ear bruising could have been from another cause and because C.H. had not yet submitted to a Child Advocacy Center ("CAC") interview regarding the alleged physical and sexual abuse. However, on February 8, 2019, school personnel discovered that C.H. had large bruises on his back. C.H. reported to the worker that petitioner instructed J.N. to strike him with a belt after he got into trouble for leaving his bedroom. The worker authenticated a picture of C.H.'s back, which showed bruising consistent with a belt strike. This photo was also admitted into evidence.

The worker further testified that C.H. "would get in trouble when he talked [to petitioner] about" D.H.'s sexual abuse. C.H. further told the worker that he tried to fight D.H. off when D.H. sexually abused him in their shared bedroom. According to the worker, when she asked how C.H. received the various bruises, petitioner and J.N. claimed that D.H. gave C.H. the bruises, but when D.H. was asked about the bruises, he denied hurting C.H. Finally, the worker testified that there had been referrals with this family beginning six months prior to the filing of the instant petition with the most recent referral received in January of 2019. With that referral, the DHHR attempted to implement an in-home safety plan, which would have required petitioner and J.N. to attend parenting and adult life skills classes and the children to submit to CAC interviews. However, the CPS worker could not get in touch with petitioner and J.N. to implement the plan. At the close of evidence, the circuit court ratified the children's emergency removal.

Following the children's CAC interviews, the circuit court held a series of contested adjudicatory hearings in May of 2019 and July of 2019. In May of 2019, at the request of petitioner's counsel, the guardian proffered her notes regarding C.H. and D.H.'s disclosures. The guardian stated that C.H. reported that D.H. sexually abused him at least ten times and that when he told petitioner about the abuse, petitioner grounded him. D.H. did not mention any sexual abuse of C.H. to the guardian and only mentioned that C.H. had autism and was bullied at school. D.H. further advised the guardian that he got along with his little sister, S.H., as well as J.N. In response to the proffer, the CPS worker stated that the guardian's notes were consistent with what C.H. and D.H. disclosed in their CAC interviews.

At a hearing in July of 2019, the CAC forensic interviewer for the children testified that C.H. divulged allegations of physical abuse by J.N. Specifically, the following exchange took place:

[The DHHR]: Now, in this disclosure, can you briefly describe what [C.H.] disclosed in regard to [J.N.'s] physical abuse perpetrated on him?

[Interviewer]: He stated that they whipped him with belts and ball bats. That [J.N.]

2

broke his finger and kicked him with his boot. That he hit his head off a toy box for eating and put a giant egg on the back of his head. He states that he gets hit in the back and gets hit in the knees with a baseball bat. He states that he gets hit on his back, butt, and hands with a belt and it leaves welts. Those are the things that I have in my notes.

C.H. further disclosed sexual abuse by D.H. and that petitioner would often ground D.H. and C.H. to their shared bedroom. During S.H.'s interview, she disclosed that J.N. struck her in the face and used the toybox to hurt her and C.H. She mentioned that J.N. physically abused C.H. several times. She also stated that D.H. touched her vaginal area during an occasion when she was sleeping in petitioner's room. Last, during D.H.'s interview, D.H. denied anyone getting hurt in the home, denied any sexual contact, gave short nonspecific answers, and was not forthcoming with the forensic interviewer. Regarding C.H. and S.H.'s interviews, the interviewer stated that there were no red flags and that their statements were consistent. The circuit court then accepted into evidence the forensic interview reports for C.H. and S.H. as well as additional photographs of C.H.'s bruises and injuries. Next, a CPS worker testified that there were two prior referrals for the family and that in June of 2013, due to a referral regarding sexual abuse, physical abuse, and drug abuse, C.H. submitted to a CAC interview wherein he denied all allegations and said that his denial would make petitioner happy. The worker, who observed all three children's most recent CAC interviews, provided further testimony consistent with the allegations of the petition and the testimony of the forensic interviewer. However, she added that C.H. disclosed extensive verbal abuse and threats of violence by J.N.

Petitioner testified that neither C.H. nor S.H. divulged sexual abuse to her. When questioned about disturbing sexual behavior D.H. exhibited at his current placement, petitioner answered that, "[h]e does messed up things sometimes" and that D.H. had been in and out of therapy for years. She further stated that C.H. "made up stories" all the time and was lower functioning. She explained that D.H. was not physically able to sexually abuse C.H. and S.H. due to a medical condition, which resulted in D.H.'s sexual organs failing to develop. Additionally, she testified that, due to C.H. and D.H. having constant fights, D.H. moved out of the home and lived with his father from November 17, 2018, to February 6, 2019, and, therefore, D.H. was not in the home during the times of C.H.'s alleged abuse. Petitioner testified that C.H. was suspended from school in January of 2019 for inappropriate sexual language and that C.H. told the school personnel that he learned the language and behavior from D.H. Regarding the allegations against J.N., petitioner denied that he corporally punished the children and denied that he physically abused them. Petitioner concluded that she did not believe C.H.'s allegations of sexual and physical abuse. Ultimately, the circuit court adjudicated petitioner as an abusing parent.

Thereafter in September of 2019, the DHHR moved the circuit court to find that aggravated circumstances existed in regard to petitioner as she failed to act on C.H.'s disclosures of abuse and continued to have C.H. and D.H. share a bedroom. The DHHR also argued that petitioner was aware of J.N.'s physical abuse of C.H. and S.H. and did nothing to intervene to stop the abuse. In response to the DHHR's motion, petitioner argued that her actions did not rise to the level of aggravated circumstances. In early November of 2019, the circuit court held a hearing upon the DHHR's motion for a finding of aggravated circumstances and granted said motion, finding that

3

petitioner's "chronic, willful ignorance of the sexual abuse [by D.H.] and aggravated circumstances against [J.N.] due to physical abuse" warranted a finding of aggravated circumstances against petitioner. Immediately thereafter, petitioner moved for a post-adjudicatory improvement period, which was held in abeyance.

The circuit court held dispositional hearings in December of 2019 and January of 2020. At these hearings, the CPS worker testified that petitioner and J.N. were compliant with parenting classes but had not completed their adult life skills classes. The worker further stated that therapy and counseling would have been available to petitioner, had she been granted an improvement period. Additionally, the worker testified that petitioner and J.N. remained together and that J.N. tested positive for methamphetamine in November of 2019. Regarding D.H., the worker explained that his tablet was recently taken into custody by the sheriff's office for an investigation into child pornography and that D.H. had threatened to rape one of the female residents at his facility.

Petitioner also testified at the dispositional hearing and advised that C.H. asked her during a recent call whether she was mad at him for lying. Petitioner further testified that she was not aware of any abuse and neglect at the time of the petition, but that "it's possible" that D.H. sexually abused his younger siblings. She also denied that J.N. had a drug problem or any anger management issues. Finally, when asked if she had abused and neglected any of the three children, petitioner answered "no" and when asked why she would need an improvement period if she had done nothing wrong, she answered "[t]o acknowledge . . . the sexual [abuse]. I wasn't aware of that." The DHHR and guardian requested that petitioner not be granted an improvement period due to her failure to acknowledge the basic allegations of abuse and neglect and that there were no services the DHHR could offer to rectify the conditions of abuse and neglect that gave rise to the filing of the petition.

By order entered on February 24, 2020, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights to S.H., C.H., and D.H. In support, the circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect of the children. The circuit court further noted that petitioner failed to identify how C.H.'s physical injuries and bruising occurred. The circuit court additionally found that the DHHR was not required to provide reasonable efforts to reunify the family because of the aggravated circumstances of J.N.'s physical abuse of C.H. and S.H. as well as D.H.'s sexual abuse of C.H. and S.H. while in petitioner's care. Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare. Petitioner now appeals the February 24, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

---

[2]The children's father's parental rights were terminated below. J.N.'s custodial rights to the children were also terminated. The permanency plan for S.H. and C.H. is adoption by their foster family. D.H.'s permanency plan is to be discharged from a specialized facility upon his eighteenth birthday.

4

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that her conduct constituted aggravated circumstances under West Virginia Code § 49-4-602.[3] According to petitioner, the circuit court's finding of her "willful blindness" did not rise to the level of aggravated circumstances. Furthermore, petitioner contends that it was reasonable for her not to believe C.H.'s claims as the CPS worker did not immediately remove C.H. from the home until the receipt of another referral two days later. Finally, petitioner claims that C.H.'s low intellectual functioning and various mental diagnoses affect his veracity. We disagree and find that petitioner is entitled to no relief.

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a

---

[3]West Virginia Code § 49-4-602(d) provides, in part:

*Situations when reasonable efforts to preserve the family are not required*. -- For purposes of the court's consideration of temporary custody pursuant to subsection (a), (b), or (c) of this section, the department is not required to make reasonable efforts to preserve the family if the court determines:

(1) The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse and sexual abuse[.]

reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as

> [a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, *or knowingly allows another person to inflict*, physical injury or mental or emotional injury, upon the child or another child in the home.

(Emphasis added).

Petitioner attacks the credibility of C.H. and S.H. and implies that the circuit court erred in adjudicating her as an abusing parent. Petitioner points to C.H.'s school and psychological records to show that he is low functioning, with various psychological diagnoses, and that his veracity has been questioned by school personnel due to his "stories" and "imagination." However, the record shows that the circuit court reviewed these records as well as C.H. and S.H.'s forensic interviews and found the children's allegations credible. Furthermore, the forensic examiner testified that C.H. and S.H.'s interviews had no red flags and were consistent. Likewise, the examiner expressed concerns with D.H.'s interview as he did not fully disclose all that he knew and was not completely forthcoming. Additionally, the CPS worker who observed the interviews agreed that C.H. and S.H.'s responses were consistent with the allegations in the petition with the added detail of J.N.'s extensive verbal abuse of C.H. Also, the record shows the corroboration of evidence of C.H.'s physical abuse as indicated by the various photographs of his bruises and injuries, some of which were shaped like a belt buckle. As this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Petitioner testified that she was unaware of any abuse in the home. However, the circuit court found her testimony incredible and the record supports this finding. Petitioner stated that in January of 2020, C.H. was suspended from school for sexual language and behaviors and that C.H. told school personnel he learned such behavior from D.H. Therefore, even taking petitioner's contention that C.H. did not divulge the sexual abuse to her as true, petitioner admitted that she was aware that C.H. was exposed to sexual language and actions by D.H. weeks prior to the filing of the abuse and neglect petition. Further, C.H. reported to the CAC interviewer that when he told petitioner about the abuse, she grounded him and that D.H. would be grounded with him in their shared bedroom. Regarding petitioner's contention that D.H. was not in the home during the time of C.H.'s allegations, there was conflicting evidence as to when and where D.H. lived prior to the filing of the petition. Notably, petitioner completely disregards S.H.'s disclosures during her CAC interview that gave detailed accounts of J.N.'s physical abuse and D.H.'s sexual abuse. Finally, petitioner fails to account for C.H. bruises and other injuries. The record shows that C.H. stated that petitioner directed J.N. to hit him with a belt as punishment and that he was struck, beaten, kicked, and hit on multiple occasions by J.N. In light of the above evidence, the circuit court properly found that the children were physically and sexually abused in the home, and that petitioner was aware of said abuse and ignored it. Accordingly, we find no error in the circuit court's adjudication of petitioner.

6

The same evidence supports the circuit court's finding of aggravated circumstances. According to West Virginia Code § 49-4-604(c)(7)(A),

> the department is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse, and sexual abuse.

According to the record, despite knowing of D.H.'s sexual behaviors with C.H., petitioner continued to have the two boys share a bedroom. Additionally, C.H. divulged that D.H.'s sexual abuse occurred about ten times. Also, over the course of the investigation, C.H. reported many different instances of being punished and described in detail how J.N. inflicted physical abuse upon him. Petitioner's failure to take any steps to protect C.H. from D.H.'s sexual abuse and J.N.'s physical abuse is egregious, given that C.H. made detailed disclosures that D.H. was sexually abusing him in their shared bedroom and that C.H. appeared to school with bruises and injuries consistent with belt strikes. As the above evidence establishes that petitioner was aware of the children's chronic abuse and D.H.'s sexual abuse of the other children and failed to act, the circuit court did not err in finding that aggravated circumstances existed.

Next, petitioner argues that the circuit court erred in terminating her parental rights for her failure to acknowledge the basic allegations of the children's abuse and neglect. According to petitioner, when she expressed her doubts about the allegations of abuse and neglect, she was "deemed to have not acknowledged the truth about C.H.'s claim[s] and her parental rights were terminated" as she was "ineligible" for a post-adjudicatory improvement period. She further contends that her parental rights should not have been terminated because she doubted C.H.'s claims when the circuit court's findings of abuse and neglect do not require "proof beyond a reasonable doubt" of the allegations.

Petitioner acknowledges that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Despite this recognition, petitioner argues on appeal that "at every turn" she "denied that D.H. had ever sexually abused C.H. or S.H." and that J.N. never physically abused the children. At the adjudicatory hearing, petitioner testified that D.H. "does messed up things sometimes" and that D.H. had been in and out of therapy for years. Even after learning of D.H.'s escalated sexually violent behaviors over the course of the proceedings, petitioner continued to disbelieve C.H. and S.H. and instead believed D.H. Further, despite J.N. failing a drug screen for methamphetamine, petitioner did not believe that J.N. had a drug problem. Most importantly, petitioner refused to acknowledge that J.N. physically abused S.H. and C.H. even when faced with evidence of C.H.'s marks and bruises

and C.H. and S.H.'s disclosures. As such, there is no dispute that petitioner wholly failed to recognize any of the conditions of abuse and neglect at issue in these proceedings.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) sets forth that "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" means that the abusing parent "ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Moreover, a circuit court may terminate a parent's parental rights when they refuse to identify the perpetrator of physical abuse. Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). Here, petitioner failed to identify the perpetrator of C.H.'s physical abuse or provide an explanation for the injuries he sustained while in her care. Without an acknowledgement of the conditions of the physical and sexual abuse or the perpetrator of the abuse, the circuit court correctly determined that there was no reasonable likelihood that the conditions would be substantially corrected in the near future and that termination was necessary for the children's welfare. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison