# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **S.H., C.H., and D.H.**

**No. 20-0562** (Monongalia County 19-JA-38, 19-JA-39, and 19-JA-40)

**FILED**
**February 2, 2021**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Custodian J.N., by counsel DeAndra Burton, appeals the Circuit Court of Monongalia County's February 24, 2020, order terminating his custodial rights to S.H., C.H., and D.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman ("guardian"), filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that his conduct constituted aggravated circumstances and terminating his custodial rights due to his failure to acknowledge the basic truth of the allegations of abuse and neglect of the children.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 12, 2019, the DHHR filed a child abuse and neglect petition against petitioner (the children's custodian) and the children's mother alleging that petitioner physically abused C.H. The DHHR further alleged that then-sixteen-year-old D.H. sexually abused his then-fourteen-year-old brother C.H. while in petitioner's care. Upon a referral from school personnel on February 6, 2019, a Child Protective Services ("CPS") worker spoke to C.H. at which time C.H. divulged extensive sexual abuse by D.H., which began about a month prior. C.H. reported that he believed that D.H. was also sexually abusing their younger sister, then-four-year-old S.H. Further, C.H. reported that petitioner struck him in the head. Two days after the initial interview, the CPS worker received another referral from the school that C.H. had large bruises on his upper and lower back,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

with several marks matching a belt buckle. C.H. reported that petitioner beat him with a belt, and photographs were taken of C.H.'s bruises and injuries.

Following the children's Child Advocacy Center ("CAC") interviews in February of 2019, the circuit court held a contested adjudicatory hearing in July of 2019. The CAC forensic interviewer for the children testified that C.H. divulged allegations of petitioner's physical abuse. Specifically, the following exchange took place:

[The DHHR]: Now, in this disclosure, can you briefly describe what [C.H.] disclosed in regard to [petitioner's] physical abuse perpetrated on him?

[Interviewer]: He stated that they whipped him with belts and ball bats. That [petitioner] broke his finger and kicked him with his boot. That he hit his head off a toy box for eating and put a giant egg on the back of his head. He states that he gets hit in the back and gets hit in the knees with a baseball bat. He states that he gets hit on his back, butt, and hands with a belt and it leaves welts. Those are the things that I have in my notes.

C.H. also reported to the interviewer that petitioner "smashes pills." During S.H.'s interview, she disclosed that petitioner struck her in the face and used the toybox to hurt her and C.H. She mentioned that petitioner physically abused C.H. several times. She also stated that D.H. touched her vaginal area during an occasion when she was staying in the mother's room. Lastly, during D.H.'s interview, D.H. denied that anyone was hurt in the home, denied any sexual contact, gave short nonspecific answers, and was not forthcoming with the forensic interviewer. Regarding C.H. and S.H.'s interviews, the interviewer stated that there were no red flags and that their statements were consistent. On cross-examination, the interviewer testified that C.H. did not report that he had been physically abused by anyone else other than petitioner. The circuit court then accepted into evidence the forensic interview reports for C.H. and S.H. as well as additional photographs of C.H.'s bruises and injuries.

Next, a CPS worker testified that there were two prior referrals for the family—one in 2009 and one in 2013. In June of 2013, due to a referral regarding sexual abuse, physical abuse, and drug abuse, C.H. submitted to a CAC interview wherein he denied all allegations and said that his denial would make the mother happy. The worker, who observed all three children's most recent CAC interviews, provided further testimony consistent with the petition's allegations and the forensic interviewer's testimony. She stated that C.H. reported petitioner kicking him in the head and injuring his ear and finger. Also, C.H. told her that the mother directed petitioner to strike him with a belt as punishment. The worker added that C.H. disclosed extensive verbal abuse and threats of violence by petitioner. Specifically, C.H. stated that petitioner told him he would "kill him, strangle him, and that he was going to bury him in the ground or knock his teeth out." Additionally, she stated that when she asked petitioner about the origin of C.H.'s injuries, petitioner blamed D.H. or guessed that bullies at school hurt C.H. On cross-examination, the worker explained that the children were not immediately removed on February 6, 2019, so that the DHHR could further assess the allegations and get the children scheduled for forensic interviews.

Counsel for the mother moved to have C.H.'s school records and various psychological records moved into evidence, and the circuit court granted the motion. At the outset of petitioner's testimony, he explained that C.H. "didn't really feel pain" like a "normal kid" because of his autism. When questioned about the bruises on C.H.'s back, petitioner answered "I don't know" but then blamed D.H. for possibly causing the bruises. Then, when questioned about his positive drug screen for methamphetamine in May of 2019, petitioner answered that he did not have a drug abuse problem. Petitioner testified that he failed to submit to drug screens after May of 2019 due to the lack of transportation. Petitioner stated that he did not physically abuse any of the children, that C.H. was "confused," and that S.H. was only copying what C.H. said. Ultimately, the circuit court adjudicated petitioner of abusing the children based upon this evidence.

Thereafter in September of 2019, the DHHR moved the circuit court to find that aggravated circumstances existed in regard to petitioner's physical abuse of the children. In response to the DHHR's motion, petitioner argued that his actions did not rise to the level of chronic abuse, which he asserted is "commonly defined as continuing and occurring repeatedly for a long period of time; habitually occurring; and/or always present or encountered." Within his response, petitioner also requested a post-adjudicatory improvement period. In early November of 2019, the circuit court held a hearing upon the DHHR's motion for a finding of aggravated circumstances and granted said motion, finding that petitioner's physical abuse of the children constituted aggravated circumstances.

The circuit court held dispositional hearings in December of 2019 and January of 2020. At these hearings, the CPS worker testified that petitioner and the mother were compliant with parenting classes. Additionally, the worker testified that petitioner failed to regularly submit to drug screens and tested positive for methamphetamine after the hearing in November of 2019. Regarding D.H., the worker explained that his tablet was recently taken into custody by the sheriff's office for an investigation into child pornography and that D.H. had threatened to rape one of the female residents at his facility.

Petitioner also testified that he was willing to participate in substance abuse counseling and anger management, yet later stated that he did not have an anger management problem and that he had not relapsed. Petitioner denied physically abusing C.H. and S.H. The DHHR and guardian opposed petitioner's motion for an improvement period due to his failure to acknowledge the basic allegations of abuse and neglect and that there were no services the DHHR could offer to rectify the conditions of abuse and neglect that gave rise to the filing of the petition.

By order entered on February 24, 2020, the circuit court denied petitioner's motion for an improvement period and terminated his custodial rights to S.H., C.H., and D.H. In support, the circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect of the children. The circuit court further noted that petitioner failed to identify how C.H.'s physical injuries and bruising occurred. The circuit court additionally found that the DHHR was not required to provide reasonable efforts to reunify the family because of the aggravated circumstances of petitioner's physical abuse of C.H. and S.H. Based on this evidence, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect

could be substantially corrected in the near future and that termination of petitioner's custodial rights was necessary for the children's welfare. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him. In support, petitioner claims that C.H.'s low intellectual functioning and various mental diagnoses affected his veracity and that the DHHR did not initially believe C.H.'s claims of petitioner's physical abuse as it returned the child to the home. Petitioner also argues that the circuit court erred in finding that his conduct constituted aggravated circumstances under West Virginia Code § 49-4-602.[3] According to petitioner, his physical abuse did not rise to the level of aggravated circumstances because the DHHR failed to prove that the physical abuse "occurred repeatedly, for a long period of time or habitually." We disagree and find that petitioner is entitled to no relief.

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as

---

[2]The parents' parental rights were terminated below. The permanency plan for S.H. and C.H. is adoption by their foster family. D.H.'s permanency plan is to continue in his specialized treatment through his eighteenth birthday.

[3]West Virginia Code § 49-4-602(d) provides, in part:

*Situations when reasonable efforts to preserve the family are not required.* -- For purposes of the court's consideration of temporary custody pursuant to subsection (a), (b), or (c) of this section, the department is not required to make reasonable efforts to preserve the family if the court determines:

(1) The parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse and sexual abuse[.]

4

to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as

[a] child whose health or welfare is being harmed or threatened by . . . [a] parent . . . who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.

Petitioner attacks the credibility of C.H. and S.H. and implies that the circuit court erred in adjudicating him as an abusing parent. Petitioner points to C.H.'s school and psychological records to show that he is low functioning, with various psychological diagnoses, and that his veracity has been questioned by school personnel due to his "stories" and "imagination." However, the record shows that the circuit court reviewed these records as well as C.H. and S.H.'s forensic interviews and found the children's allegations credible. Furthermore, the forensic examiner testified that C.H. and S.H.'s interviews had no red flags and were consistent. Likewise, the examiner expressed concerns with D.H.'s interview as he did not fully disclose all that he knew and was not completely forthcoming. Additionally, the CPS worker who observed the interviews agreed that C.H. and S.H.'s responses were consistent with the allegations in the petition with the added detail of petitioner's extensive verbal abuse of C.H. Also, the record shows the corroboration of evidence of C.H.'s physical abuse as indicated by the various photographs of his bruises and injuries, some of which were shaped like a belt buckle. As this Court has long held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

Notably, petitioner completely disregards S.H.'s independent disclosures during her CAC interview that gave detailed accounts of petitioner's physical abuse and discounts S.H.'s disclosures by stating that she merely copied C.H. Petitioner fails to account for C.H.'s bruises and other injuries he received while in petitioner's care. The record shows that C.H. stated that petitioner hit him with a belt as punishment and that he was struck, beaten, kicked, and hit on multiple occasions by petitioner for various infractions. In light of the above evidence, the circuit court properly found that the children were physically and sexually abused in the home. Accordingly, we find no error in the circuit court's adjudication of petitioner.

The same evidence supports the circuit court's finding of aggravated circumstances. According to West Virginia Code § 49-4-604(c)(7)(A),

5

the department is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child, another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse, and sexual abuse.

According to the record, over the course of the investigation, C.H. reported many different instances of being punished and described in detail how petitioner inflicted physical abuse upon him. C.H. appeared at school with bruises and injuries consistent with belt strikes and the CPS worker noted injuries to his ear and finger. Furthermore, C.H. stated that petitioner threatened to "kill him, strangle him, and that he was going to bury him in the ground or knock his teeth out." Although petitioner claims that C.H. was "confused" and did not feel pain like a "normal kid" due to his autism, the forensic examiner verified that C.H. named only petitioner as the perpetrator of his physical abuse and that C.H. described his physical abuse in great detail, such as being hit so hard that it left an "egg" on his head. As the above evidence establishes that petitioner chronically abused C.H. as regular excessive corporal punishment, the circuit court did not err in finding that aggravated circumstances existed.

Next, petitioner argues that the circuit court erred in terminating his custodial rights for his failure to acknowledge the basic allegations of the children's abuse and neglect. According to petitioner, his custodial rights should not have been terminated because he denied the allegations of physical abuse. Petitioner contends that the circuit court's clear and convincing standard for findings of abuse and neglect leaves doubt of the basic allegations and, therefore, a parent should not be required to acknowledge the truth of those allegations if they are not culpable. We find that petitioner is entitled to no relief.

Petitioner acknowledges that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Despite this recognition, petitioner argues on appeal that he is not culpable and did not abuse the children. He concedes that C.H. received injuries and bruises while in his care but fails to give explanations for them. Petitioner refused to acknowledge his physical abuse of S.H. and C.H. even when faced with evidence of C.H.'s marks and bruises and C.H. and S.H.'s independent and consistent disclosures to CPS workers and the forensic interviewer. As discussed previously, the circuit court properly adjudicated petitioner based upon the evidence and, despite these findings, petitioner wholly failed to recognize the existence of the problem—his physical abuse of the children—as a condition of abuse and neglect at issue in these proceedings. Without the acknowledgement of the problem, it is impossible for petitioner to correct it, and the circuit court was left with no alternative than the termination of petitioner's custodial rights.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate custodial rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) sets forth that "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" means that the abusing parent "ha[s] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Moreover, a circuit court may terminate a parent's parental rights when he or she refuses to identify the perpetrator of physical abuse. Syl. Pt. 3, *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993). Here, petitioner failed to acknowledge himself as the perpetrator of C.H.'s and S.H.'s physical abuse or provide an actual explanation for the injuries C.H. sustained while in his care. Without an acknowledgement of the conditions of the physical abuse or the perpetrator of the abuse, the circuit court correctly determined that there was no reasonable likelihood that the conditions would be substantially corrected in the near future and that termination was necessary for the children's welfare. Accordingly, we find no error in the circuit court's termination of petitioner's custodial rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 2, 2021


**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7