**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.H. and B.S.**

**No. 20-0700** (Wood County 19-JA-73 and 19-JA-74)

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's July 30, 2020, order terminating her parental rights to K.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem for the children, Michael D. Farnsworth, filed a response on behalf of the children in support of the circuit court's order. The guardian ad litem for petitioner, George M. Torres, filed a response in opposition to the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, terminating her parental rights, and failing to impose a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner had a history of substance abuse and suffered from untreated mental health issues that affected her ability to parent. The DHHR alleged that petitioner medically neglected thirteen-year-old K.H. and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, we note that the July 30, 2020, order on appeal terminates petitioner's parental rights to K.H. only. Although petitioner asserts that her parental rights to B.S. were terminated in a later order, which she includes in her appendix on appeal, she failed to appeal that order and, therefore, the termination of her parental rights to B.S. is not at issue on appeal.

that the home was unfit and unsanitary.[2] The DHHR reported that K.H. is diagnosed with cystinosis, a rare life-threatening condition that requires approximately sixty pills and oral doses administered daily and that petitioner failed to ensure that K.H. took her medications. Petitioner also failed to take K.H. to regular doctor's appointments with her specialists and therapists. In addition to medical neglect, the DHHR alleged educational neglect as K.H. was truant in school. Regarding another child, B.S., the DHHR alleged that petitioner failed to provide him with food, clothing, shelter, or other necessities and had no contact with B.S. for more than six months. Finally, the DHHR alleged that petitioner received services from mental health facilities as well as in-home youth services with the DHHR but failed to follow through with any services or treatment plans. At a hearing in late April of 2019, the circuit court ordered petitioner to a undergo a psychological and competency evaluation.

After several failed attempts to obtain petitioner's evaluation, the circuit court ordered in June of 2019 that petitioner be committed for a fifteen-day hold at the DHHR's William R. Sharpe Jr. Hospital for observation and examination to determine her competency to participate in the underlying proceedings. Upon admission to the hospital, staff found a "set of scales and meth pipes" on petitioner's person. Petitioner's evaluation was completed by a licensed psychologist in August of 2019. The psychologist's recommendation was that petitioner would not have been competent to stand trial in a criminal proceeding, but the psychologist deferred to the circuit court as to petitioner's competency to participate in the underlying civil proceedings regarding her parental rights. Thereafter, at a status hearing in September of 2019, the circuit court appointed petitioner a guardian ad litem.

The circuit court held a contested adjudicatory hearing in November of 2019. Petitioner failed to appear, but counsel represented her. The circuit court accepted petitioner's psychological and competency report as part of the record. First, Dr. Orton Armstrong, K.H.'s pediatrician, testified and stated that K.H. was born with cystinosis, a disease of the kidneys with long-term implications that requires K.H. to take numerous medications up to four times a day. He further stated that he worked in tandem with K.H.'s nephrologist, Dr. Jessica Chiang, to monitor K.H.'s cystine levels in her blood. He explained that without proper administration of medications, K.H. would suffer from renal failure and possible blindness. He stated that when K.H. lived with the maternal grandmother, she received proper treatment and attended all appointments. However, after the maternal grandmother died in 2018 and petitioner obtained custody of K.H., petitioner was unable to maintain compliance with K.H.'s medication regimen and missed an appointment with Dr. Chiang for routine blood work. According to Dr. Armstrong, petitioner would often call his office complaining that K.H. would not take the medicine, yet she would not bring K.H. to Dr. Armstrong's office for appointments. He also stated that petitioner was confrontational with his staff when they attempted to set up appointments for K.H. Dr. Armstrong stated that K.H. came to his office for the first time while in petitioner's care in March of 2019 with such a severe case of headlice that he could see the lice dropping out of her hair. He prescribed her a heavy dose of medication to kill the lice because he was afraid petitioner would not bring K.H. back for more treatment. Dr. Armstrong explained that K.H. was largely compliant with her medications while in her maternal grandmother's care and that she has been compliant with medications while in the

---

[2]The maternal grandmother had legal guardianship of K.H. until her passing in October of 2018. At that time, K.H. was returned to petitioner's care.

2

care of her foster family. However, K.H. was not compliant with medication while in petitioner's care, claiming that the medications made her nauseous.

Next, the director for school attendance in Wood County, West Virginia, testified that K.H. had 78 days of unexcused absences during a school year of 180 days and that petitioner failed to attend a conference scheduled in January of 2019 to address K.H.'s truancy. According to the director, K.H. failed the previous school year. The DHHR then presented the testimony of petitioner's aunt who explained that petitioner was previously diagnosed with bipolar disorder many years ago and stopped taking her medication in 2018, stating that she no longer needed the medication. The aunt also stated that during a visit to see petitioner and K.H. in December of 2018, she discovered large amounts of pills shoved into the couch cushion and learned that K.H. had been putting the pills in the couch rather than taking them. When she asked K.H. about taking her medication, K.H. replied that petitioner did not make her take it. The aunt explained that K.H. was required to take thirty pills twice a day, which made it difficult to get K.H. to cooperate sometimes. Next, the youth services worker testified that she became involved with K.H. and petitioner in November of 2018 due to K.H.'s truancy and noncompliance with her medication. The worker indicated that petitioner was unable to get K.H. to take her medications, yet school personnel had no issues with K.H.'s medication compliance. The worker stated that K.H.'s attendance was poor while in petitioner's care, but her attendance and grades drastically improved since being placed with a foster family. Notably, the worker testified that petitioner told her at a meeting in February of 2019 that she wanted a second opinion as to K.H.'s diagnosis, that she did not believe K.H. needed the medication, and that she no longer gave K.H. her medications. In the worker's opinion, petitioner made no improvements between November of 2018 and K.H.'s removal in April of 2019, despite the receipt of resources such as individualized parenting sessions in K.H.'s truancy action.

Petitioner's ex-husband, the father of B.S. testified that petitioner had not had contact with B.S. since 2006, owed child support for B.S. as well as two now-adult sons, and never provided for any of B.S.'s shelter, clothing, food, and other necessities. He further stated that during their marriage, petitioner attacked him with a knife several times and that she gave one of their sons a Xanax when he was in the first grade, which resulted in Child Protective Services intervention. Next, the DHHR worker testified that in April of 2019, she found petitioner's home to be unsanitary and unfit with trash, clothing, paper, and animal bedding strewn about the floor. When the worker asked petitioner questions about K.H., petitioner could not stay on task and roamed from room to room searching for things in pockets, purses, and bags. Her answers were nonresponsive to the DHHR worker's questions and when the worker requested K.H.'s medications, petitioner answered that she did not have them despite K.H. living with her. Finally, the DHHR worker stated that petitioner acknowledged that she had mental illness but was not taking medication. At the close of evidence, the circuit court adjourned to another date to continue the adjudicatory hearing.

In February of 2020, petitioner was arrested and incarcerated in Ohio. After numerous continuances, the circuit court reconvened the adjudicatory hearing in June of 2020. Petitioner failed to attend, but counsel represented her. The parties then made closing arguments. Having noted the evidence at the November of 2019 hearing and having heard the arguments of counsel, the circuit court adjudicated petitioner as an abusing parent based upon her abandonment of B.S.

and her educational and medical neglect of K.H. The circuit court also noted that petitioner had not complied with her case plan, her mental illness remained untreated, and she remained incarcerated.

In July of 2020, the DHHR submitted a court summary stating that its last contact with petitioner occurred in February of 2020. Also in July, the circuit court held a final dispositional hearing. Petitioner failed to appear, but counsel represented her. The circuit court took judicial notice of all prior hearings and evidence submitted. The DHHR requested the termination of petitioner's parental rights, arguing that petitioner delayed the proceedings by failing to submit to her psychological and competency evaluation for several months, had little participation in the services offered, had not addressed her mental health issues despite her acknowledgment of such, and remained incarcerated. The DHHR also proffered that K.H. needed a kidney transplant and could not be placed on a recipient list until she had achieved a permanent placement such as adoption with her foster family. Petitioner's counsel argued that the circuit court should terminate petitioner's custodial rights only as she could eventually get treatment to correct the conditions of abuse and neglect. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect or abuse in the near future and that termination of her parental rights was necessary for K.H.'s welfare. Accordingly, the circuit court terminated petitioner's parental rights by its July 30, 2020, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent because the DHHR failed to meet its burden to establish that the children were neglected by clear and convincing evidence. She further blames K.H. for being truant and her own medical neglect by refusing to take her medications. We find that petitioner's argument is without merit.

---

[3]K.H.'s father's parental rights were terminated below. The permanency plan for K.H. is adoption by a foster family. B.S. remained in the care of his nonabusing father.

4

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted).

Here, the overwhelming evidence supports the circuit court's adjudication of petitioner as an abusing parent. The DHHR presented evidence that K.H. suffered from a rare life-threatening disease that requires intense care with specialists and strict adherence to medication administration. The evidence established that although K.H. complained about taking her medications, she was compliant with medications while living with her maternal grandmother but not with petitioner. Also, Dr. Armstrong testified that K.H. was compliant with her medications after being placed with a foster family. Most importantly, the youth services worker testified that petitioner admitted that she was not giving K.H. her medications, which was against medical advice and life-threatening to K.H. Additionally, Dr. Armstrong testified that petitioner failed to schedule appointments with his office, was hostile to staff, and failed to bring K.H. to her specialist, Dr. Chaing, for important blood work. Accordingly, petitioner's placing blame on K.H. for her failure to take the medication is without merit. The evidence clearly shows that petitioner failed to take K.H. to required doctor's appointments and failed to administer her life-saving medications.

The same can be said regarding K.H.'s truancy. Petitioner blames K.H. for her failure to go to school, but K.H. had no truancy issues while in the care of the maternal grandmother and has had no truancy issues while in the care of her foster family. The evidence established that petitioner failed to enforce petitioner's school attendance, resulting in K.H. missing nearly half the school year and failing her grade. Moreover, while petitioner claims that she was attempting to address K.H.'s truancy and medication issues, the youth services worker stated that petitioner made no improvements when the child was in her care, despite the receipt of resources such as individualized parenting sessions in K.H.'s truancy action. Finally, as to B.S., petitioner's ex-husband testified that petitioner had not seen B.S. since 2006, failed to provide for any of the child's needs, and owed arears in child support. This evidence of abandonment remained uncontroverted. Upon review of the overwhelming evidence of K.H.'s educational and medical neglect and petitioner's abandonment of B.S., we find no error in the circuit court's adjudication of petitioner.

Next, petitioner argues that the circuit court erred in terminating her parental rights because insufficient evidence was presented to support a finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future. Petitioner argues that the failure to present evidence at the dispositional hearing and the fact that her

incarceration prevented her participation in services and attendance at hearings supports her position that termination was in error.

The dispositional phase of child abuse or neglect proceedings is governed by West Virginia Code § 49-4-604, which provides a number of dispositional alternatives the circuit court may consider. Termination of parental rights, the most restrictive alternative, is authorized only "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child." W. Va. Code § 49-4-604(c)(6). Further, West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Here, the principal reason for the termination of petitioner's parental rights was her failure to treat her serious mental illness that resulted in the abuse and neglect of the children.

We have held that

> the existence of a mental illness which renders a parent incapable of exercising proper parenting skills or of improving the adequacy of such skills and the failure of a parent to respond to rehabilitative efforts of the DHHR are circumstances warranting a finding of "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" under the statute.

*Matter of Abuse & Neglect of R.O.*, 180 W. Va. 190, 193-94, 375 S.E.2d 823, 826 (1988). We have also recognized "that the inability or unwillingness of a parent to obtain medical treatment to correct a mental deficiency that endangers the welfare of his or her children will support a termination of parental rights." *Id.* at 194, 375 S.E.2d at 826-27 (1988) (citation omitted).

Below, petitioner's aunt testified that petitioner has been aware of her mental illness for many years and chose to stop taking her medication in 2018. Also, petitioner repeatedly refused to participate in the DHHR's psychological services, which resulted in her fifteen-day commitment at the DHHR's William R. Sharpe Jr. Hospital in June of 2019. Petitioner was thereafter released and failed to follow through with her case plan or otherwise cooperate with the DHHR's efforts to address her mental illness. She further failed to attend the adjudicatory hearing in November of 2019 without explanation. Instead, petitioner went to Ohio and was ultimately arrested and incarcerated in February of 2020. Prior to the dispositional hearing, the DHHR submitted a report stating that petitioner remained incarcerated and, therefore, was unable to participate in services and that the DHHR worker last had contact with petitioner in February of 2020. Accordingly, there was no additional evidence to present at the dispositional hearing and the circuit court went forward with the available evidence.

Similarly, the record supports a finding that the termination of petitioner's parental rights was necessary for K.H.'s welfare. Petitioner's severe mental health issues and subsequent educational and medical neglect required K.H.'s removal and petitioner failed to correct those issues. Further, the DHHR explained that K.H. needed a kidney transplant and that K.H. could not

be placed on the recipient list without being placed in a permanent home, such as adoption with the foster family. Accordingly, we find that the record supports the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for K.H.'s welfare.

Lastly, petitioner argues that the circuit court failed to impose a less-restrictive dispositional alternative to the termination of her parental rights. Petitioner contends that K.H. could have achieved permanency through a guardianship with the foster family, which would have allowed her time to obtain mental health treatment. However, this Court has held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part, (citation omitted). Furthermore, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record supports the requisite findings for the circuit court to terminate petitioner's parental rights. Accordingly, we find no error in the circuit court's ruling below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2020, order is hereby affirmed. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

7