**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **E.H., N.H., and I.H.**

**No. 24-434** (Logan County CC-23-2022-JA-50, CC-23-2022-JA-51, and CC-23-2022-JA-52)

## MEMORANDUM DECISION

Petitioner Mother M.H.[1] appeals the Circuit Court of Logan County's June 24, 2024, order terminating her parental rights to E.H., N.H., and I.H., arguing that the circuit court erred by adjudicating her as an abusing and neglecting parent and by terminating her parental rights without granting her a post-adjudicatory improvement period.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

On May 2, 2022, the DHS filed a petition alleging that the petitioner abused and neglected her five adoptive children, L.H., J.H., E.H., N.H., and I.H.[3] The DHS alleged that the petitioner physically and emotionally abused the children and that she permitted her ex-husband, W.H., to live in the home and watch the children despite his drug use. After initially permitting the children to remain in the petitioner's custody, the DHS eventually obtained emergency custody of the children after filing two amended petitions that included allegations of, among other things, sexual abuse by W.H.

---

[1] The petitioner appears by counsel Diana Carter Wiedel. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel J. Christopher White appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For the purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner voluntarily relinquished her parental rights to the two oldest children, L.H. and J.H., at a hearing in October 2023. The petitioner does not challenge the court's subsequent termination of her parental rights to those children on appeal.

The circuit court held a preliminary hearing on August 31, 2022, wherein a Child Protective Services ("CPS") worker testified about his investigation, which included speaking to the children and attending their Child Advocacy Center ("CAC") interviews. He stated that L.H. disclosed emotional and physical abuse by the petitioner and sexual abuse by W.H. The CPS worker further testified that he observed bruises and scars on the children that corroborated their disclosures. The CPS worker also testified that the petitioner confirmed W.H.'s caretaking role in the children's home and accused L.H. of lying about the sexual abuse. At the hearing's conclusion, the court found probable cause that the petitioner had abused and neglected the children.

The court held a series of adjudicatory hearings between January and August 2023, during which the court took judicial notice of the prior testimony and entered the children's CAC interview recordings into evidence. Further, the court heard from the CPS worker, who testified to a prior sexual abuse allegation against W.H. made by the petitioner's niece. Another CPS worker testified that she had personally observed W.H. caring for the children. The court also conducted an in-camera interview of L.H., who testified that the petitioner screamed at the children "mostly every day," and admitted into evidence audio recordings of the petitioner screaming at and berating J.H. The court then heard testimony from the petitioner, who denied the allegations. The petitioner blamed L.H. for her behavior and claimed that the children who accused W.H. of sexual abuse had lied and had mental illnesses. The petitioner admitted that W.H. acted in a caretaking capacity toward her children and was at the home almost daily. Further, the petitioner presented additional witnesses who had observed her interacting with the children. The witnesses generally stated that they had observed no signs of fear or abuse and that the children had a positive relationship with the petitioner.

Ultimately, the court found that the petitioner had abused and neglected the children, based on extensive evidence that the petitioner had inflicted physical and emotional harm on the children and had failed to protect the children from her ex-husband, W.H. The court also found that the allegations were supported by the children's CAC interviews and the audio recordings. While the court acknowledged the testimony presented by the petitioner's witnesses, it found that their limited exposure to the children made them little more than character witnesses. As such, the court found that there was clear and convincing evidence that the petitioner had failed to protect the children and chronically abused them physically, mentally, and emotionally.

In April 2024, the court held a dispositional hearing where it considered the petitioner's motion for an improvement period and the DHS's motion to terminate the petitioner's parental rights. The court heard evidence regarding the petitioner's psychological evaluation which resulted in a poor prognosis from the conducting psychologist for improved parenting and a recommendation that she undergo anger management and substance abuse counseling. The DHS then presented the testimony of the CPS worker assigned to the case, who testified that the petitioner failed to participate in the recommended anger management and substance abuse counselling, minimized her actions, and refused to acknowledge any shortcomings. Further, the CPS worker stated that the DHS had concerns with returning the children to the petitioner's care due to the petitioner's continued association with W.H. The petitioner's counselor then testified that she had gone through the psychological evaluation and attempted to address the issues with the petitioner. However, she further testified that she was not certified to provide treatment

specifically for anger management and did not feel the petitioner needed substance abuse counseling. Following this hearing, the court reviewed recordings of the visits between the petitioner and the children at the petitioner's request.

Ultimately, the court entered an order terminating the petitioner's parental rights to the children. In the order, the court found that the petitioner minimized or denied any wrongdoing on her part and continued to interact with W.H. Based on these findings, the court concluded that the petitioner was unwilling or unable to correct the conditions of abuse and neglect. Thus, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination of the petitioner's parental rights was in the best interests of the children. Accordingly, the court terminated the petitioner's parental rights to E.H., N.H., and I.H.[4] It is from this dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first argues that the circuit court erred in adjudicating her of abusing and neglecting E.H., N.H., and I.H. because the court "failed to acknowledge the overwhelming evidence" she presented. Upon our review of the record, we disagree. West Virginia Code § 49-4-601(i) requires the circuit court to determine "whether the child is abused . . . based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." Furthermore, "[t]he statute . . . does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." Syl. Pt. 3, *In re F.S.*, 233 W. Va. 538, 759 S.E.2d 769 (2014) (quoting Syl. Pt. 3, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)). The evidence presented by the DHS included the two eldest children's recorded statements regarding the petitioner's verbal and physical abuse, which were corroborated by recordings of the petitioner screaming at the children; the physical injuries and scars witnessed by the CPS worker; and evidence that the children were left in the care of W.H., despite his substance abuse and the sexual abuse allegations made against him. Although the petitioner asserts that the circuit court failed to acknowledge her witnesses' testimony, the record shows that the circuit court did acknowledge this testimony but found that it lacked relevance and credibility compared to the evidence presented by the DHS. We refuse to disturb these determinations on appeal. *In re D.S.*, -- W. Va. --, --, -- S.E.2d --, --, 2025 WL 892866, at *7 (2025) (noting that, under the applicable deferential standards for abuse and neglect appeals, this Court "do[es] not reweigh the evidence or make credibility determinations."). Based on the foregoing, we conclude that the circuit court did not err in finding that the petitioner abused and neglected the children.

The petitioner also argues that the circuit court erred in terminating her parental rights without first granting her an improvement period. Under West Virginia Code § 49-4-610(2)(B), a parent seeking an improvement period must "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." This Court has made it clear "that a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement

---

[4] The petitioner, as the children's adoptive mother, was the only individual with parental rights to the children. The permanency plan for the children is adoption in their current placement.

period. Where an improvement period would jeopardize the best interests of the child, for instance, an improvement period will not be granted." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Accordingly, circuit courts have discretion to deny motions for an improvement period where no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). It is true that the record shows that the petitioner sought treatment to manage her anger, as recommended by the psychologist who performed her psychological evaluation. However, the record also shows that she continued to associate with W.H., despite the psychologist's recommendations and the circuit court's finding that he was an inappropriate person to be around the children. Critically, the petitioner does not challenge the circuit court's findings that she "minimized and/or outright denied wrongdoing in the treatment of the minor children." *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility." (quoting *In re Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640)). As such, the circuit court did not err in proceeding to disposition without granting the petitioner a post-adjudicatory improvement period.[5]

Further, the same evidence supports the circuit court's finding that there was no reasonable likelihood the petitioner could substantially correct the conditions of abuse and neglect. *See* W. Va. Code § 49-4-604(d) ("'No reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."). The court also found that termination was in the children's best interests, which the petitioner does not challenge on appeal, and circuit courts are permitted to terminate parental rights upon such findings. *See* W. Va. Code § 49-4-604(c)(6). As such, we conclude that termination of the petitioner's parental rights was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 24, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: June 26, 2025

---

[5] The petitioner raises an additional assignment of error arguing that the circuit court erred in failing to grant post-termination visitation. However, the petitioner fails to comply with Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure in that her brief does not "includ[e] citations that pinpoint when and how the issues in [this assignment] of error were presented to the lower tribunal." The petitioner cites to no portion of the record where she requested post-termination visitation, but, rather, cites only to scanned images of CDs and flash drives allegedly containing recordings of her supervised visits with the children. Given that Rule 10(c)(7) permits this Court to "disregard errors that are not adequately supported by specific references to the record on appeal," we decline to address this argument.

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV